UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

COUNTY OF ULSTER, NEW YORK
THE TOWN OF LLOYD, NEW YORK,
TOWN OF ROSENDALE, NEW YORK,
TOWN OF ULSTER, NEW YORK,
DARRELL DAY, EUGENE J. RIZZO, DANIEL
M. MARTUSCELLO, HEATHER BLUME, ANTHONY
KALIMERAS, KATHLEEN BURNS, JEFF COHEN,
DAVID M. ACKERT, AMY SHUMAN, ROBERT
VOSPER, JOSHUA CALIENDO, BEATRICE
HAVRANEK, EILEEN B. KATATSKY,
NINA POSTUPACK, NEREIDA VEYTIA,

**COMPLAINT**

Civil Action No.:

_____

(____ / ____)

Plaintiffs,

-against-

RICHARD ENRIQUE ULLOA, SARA ULLOA,
JEFFREY-CHARLES BURFEINDT,
ED-GEORGE PARENTEAU, RAYMOND TOMPKINS,
KATHERINE A. CAIRO DAVIS, KATHY STEINHILBER,

Defendants.

---

Plaintiffs, by and through their attorneys, Bailey, Kelleher & Johnson, P.C., as and for their complaint, allege as follows:

## NATURE OF THE ACTION

1.      This is a civil action seeking damages arising out of defendants' repeated and persistent fraudulent and illegal activity by falsely representing that defendants are the holders of valid Maritime and/or UCC liens against plaintiffs. These purported liens have been filed in various local and state offices to harass and extort plaintiffs. Accordingly, defendants are liable under 18 U.S.C. §§ 1961 *et. seq.* (the Racketeer

Influenced and Corrupt Organizations Act, hereinafter "RICO"), and a number of state-law based causes of action.

## THE PLAINTIFFS

2.      Plaintiff Town of Lloyd is a municipal subdivision of the State of New York.

3.      Plaintiff County of Ulster is a political subdivision of the State of New York.

4.      Plaintiff Town of Rosendale is a municipal subdivision of the State of New York.

5.      Plaintiff Town of Ulster is a municipal subdivision of the State of New York.

6.      Plaintiff Eugene Rizzo is a Town Justice for the Town of Lloyd, New York and a citizen of the State of New York.

7.      Plaintiff Darrell Day is police officer employed by the Town of Lloyd and a citizen of the State of New York.

8.      Plaintiff Daniel Martuscello is an Assistant District Attorney for the County of Ulster and a citizen of the State of New York.

9.      Plaintiff David M. Ackert is the Chief of Police for the Town of Lloyd, New York and a citizen of the State of New York.

10.     Plaintiff Kathleen Burns is a police officer employed by the Town of Lloyd and a citizen of the State of New York.

2

11.     Plaintiff Anthony Kalimeras is a police officer employed by the Town of Lloyd and a citizen of the State of New York.

12.     Plaintiff Heather Blume is a court clerk for the Town of Lloyd Justice Court and a citizen of the State of New York.

13.     Plaintiff Jeff Cohen is a police officer employed by the Town of Lloyd and a citizen of the State of New York.

14.     Plaintiff Amy Shuman is a court clerk for the Town of Lloyd Justice Court and a citizen of the State of New York.

15.     Plaintiff Robert Vosper is a Town Justice for the Town of Rosendale and a citizen of the State of New York.

16.     Plaintiff Joshua Caliendo is police officer for the Towns of Lloyd and Rosendale and a citizen of the State of New York.

17.     Plaintiff Beatrice Havranek is the County Attorney for the County of Ulster and a citizen of the State of New York.

18.     At all times relevant, plaintiff Eileen Katatsky was an employee of the County of Ulster and a citizen of the State of New York.

19.     Plaintiff Nina Postupack is the County Clerk for the County of Ulster and a citizen of the State of New York.

20.     Plaintiff Nereida Veytia is an employee of the County of Ulster and a citizen of the State of New York.

## THE DEFENDANTS

21.     Upon information and belief, defendant Richard E. Ulloa is a citizen of the State of New York.

22.     Upon information and belief, defendant Sara Ulloa is a citizen of the State of New York.

23.     Upon information and belief, defendant Jeffrey-Charles Burfeindt is a citizen of the State of New York.

24.     Upon information and belief, defendant Ed-Charles Parenteau is citizen of the State of New Jersey.

25.     Upon information and belief, defendant Raymond Tompkins is a citizen of the State of New York.

26.     Upon information and belief, defendant Katherine A. Cairo Davis is a citizen of the State of New York.

27.     Upon information and belief, defendant Kathy Steinhilber is a citizen of the State of New York.

## JURISDICTION

28.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because a portion of this action arises under the laws of the United States.  This Court has supplemental jurisdiction over plaintiffs` state-law claims under 28 U.S.C. § 1367.

4

## VENUE

29.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to plaintiffs' claims occurred in this district.

## FACTUAL ALLEGATIONS

**A.      Defendants Richard Ulloa, Kathy Cairo-Davis and Kathy Steinhilber**

      **i.      Defendants Richard Ulloa and Cairo-Davis and Plaintiffs Town of Rosendale, Vosper and Caliendo**

30.     On or about May 13, 2009, defendant Richard Ulloa was the subject of a traffic stop effected by a police officer for the Town of Rosendale, plaintiff Joshua Caliendo.  As a result of that traffic stop, defendant Richard Ulloa was issued two traffic tickets. The traffic tickets required an appearance in Rosendale Town Court where plaintiff Town Justice Robert Vosper presides.

31.     On June 2, 2009, defendant Richard Ulloa appeared before plaintiff Vosper and was sent to the Ulster County Jail due to his failure to provide identification.

32.     Shortly thereafter, defendant Richard Ulloa began a pattern of harassment and attempted extortion towards plaintiffs, including, but not limited to, filing purported maritime liens and UCC statements containing fraudulent statements asserting that plaintiffs owed defendants amounts totaling several billion dollars.

33.     Upon information and belief, the liens and UCC filings were not only frauds, but part of a course of intimidation by defendant Richard Ulloa and the others in the enterprise described below to hinder plaintiffs' enforcement of the laws of the State of

New York and interrupt or otherwise negatively affect the daily operations of the governmental subdivision plaintiffs.

34.     To wit: as part of a pattern of racketeering by a criminal enterprise and in furtherance of a scheme to defraud plaintiffs, defendants Richard Ulloa, Steinhilber and Davis, with the assistance of some or all of the remaining defendants, began sending and filing the fraudulent notices, liens and UCC Financing Statements noted below.

35.     Specifically, on June 4, 2009, defendant Richard Ulloa sent to the Town of Rosendale a "Criminal Complaint" against Justice Vosper, which included a fraudulent "invoice".

36.     Also on or about June 4, 2009, defendant Richard Ulloa sent an "invoice" to the Town of Rosendale demanding payment of over 150 million dollars due to the lack of response to the "criminal complaints" sent by defendant Ulloa.

37.     On June 11, 2009, defendant Richard Ulloa sent plaintiff Town of Rosendale a "Criminal Complaint" against plaintiff Caliendo, which included a fraudulent "invoice".

38.     On June 27, 2009, defendant Richard Ulloa sent an "invoice" to plaintiff Town of Rosendale demanding payment of over 550 million dollars due to the failure to respond to the "criminal complaints" noted above.

39.     On July 8, 2009, defendant Richard Ulloa sent plaintiff Town of Rosendale another "invoice" demanding payment of over 150 million dollars for the lack of a response to the "criminal complaints".

6

40.     Also on July 8, 2009, defendant Richard Ulloa sent plaintiff Town of Rosendale a "first notice and demand for payment" related to the lack of response to the "criminal complaints". The demand sought payment of over 550 million dollars.

41.     On August 8, 2009, defendant Richard Ulloa sent plaintiff Town of Rosendale a "second notice and demand for payment" due to the lack of a response to the "criminal complaints" seeking payment of over 165 million dollars.

42.     Also on August 8, 2009, defendant Richard Ulloa sent a "second notice and demand for payment" demanding payment of over 550 million dollars due to the lack of response to defendant Richard Ulloa's "criminal complaints" to plaintiff Town of Rosendale.

43.     On August 20, 2009, defendant Richard Ulloa sent plaintiff Town of Rosendale a "Final Notice and Demand for Payment" due to the lack of a response to the "criminal complaints" seeking payment of over 165 million dollars.

44.     Also on August 20, 2009, defendant Richard Ulloa sent plaintiff Town of Rosendale a "Final Notice and Demand for Payment" due to the lack of a response to the "criminal complaints" seeking payment of over 550 million dollars.

45.     On August 24, 2009, defendant Richard Ulloa sent a document titled "Notice of Final Determination and Judgment Nihil Dicit" to plaintiffs Town of Rosendale, McDonough, Vosper, and Caliendo. The document was verified and mailed via certified mail by defendant Cairo-Davis.

46.     On September 9, 2009, defendant Richard Ulloa sent a "Certificate of Non Response" to plaintiffs Town of Rosendale, Vosper and Caliendo reciting the numerous

fraudulent documents he had previously sent to those plaintiffs.  Upon information and belief, defendant Cairo-Davis assisted in the preparation of this document.

47.     On or about September 11, 2009, defendant Richard Ulloa caused to be sent a "Declaration and Notice of Final Determination and Judgment in Nihil Dicit" to plaintiffs Town of Rosendale, McDonough, Vosper and Caliendo.  Defendant Davis mailed this document. A copy of this document is attached hereto as Exhibit "A".

48.     The "judgment" accuses plaintiffs Town of Rosendale, Vosper and Caliendo of various "illegal" acts and recites the details of the numerous fraudulent mailings defendant Richard Ulloa sent to plaintiffs Town of Rosendale, Vosper and Caliendo.  The "judgment" was signed by defendant Richard Ulloa.

49.     On September 24, 2009, defendant Richard Ulloa filed a UCC Financing Statement ("UCC Statement") with the Washington State Department of Licensing naming plaintiff Vosper as a debtor in the amount of $165,215,000.00 plus "penalties".  The UCC statement purports to be a lien on plaintiff Vosper's home, insurance policies and other assets and further states it will be served on all financial institutions.  A copy of these documents is attached hereto as Exhibit "B".

50.     On or about October 19, 2009, defendant Richard Ulloa filed or caused to be filed a "Notice of Claim of Maritime Lien" against plaintiff Vosper in the amount of $165,215.00 in Lamar County, Georgia, Superior Court Clerk's Office.   A copy of this "lien" is attached hereto as Exhibit "C".

51.     On or about February 12, 2010, defendant Ulloa filed or caused to be filed with the New York State Department of State, UCC liens against plaintiffs Town of

8

Rosendale, Caliendo and Vosper.  These purported UCC liens, filing numbers 201002120082028 and 201002120081987 claim that defendant Ulloa is owed $165,215,000 and $532,513,000 by the aforementioned plaintiffs.  Said liens are false, fraudulent or otherwise without basis in fact.  A copy of the filing is attached hereto as Exhibit "D".

   ii.    **Defendants Richard Ulloa, Kathy Cairo-Davis and Kathy Steinhilber and Plaintiffs the County of Ulster, Havranek and Katatsky, Postupack and Veytia**

52.    Upon information and belief, property owned by defendant Richard was the subject of a foreclosure proceeding venued in Ulster County.  As related thereto, defendant Ulloa attempted to file a purported "deed" removing the foreclosing party's interest in his property.  The Ulster County Clerk rejected the "deed" offered for filing by defendant Ulloa.

53.    In retaliation for rejection of the purported deed on or about September 21, 2009, defendant Richard Ulloa caused to be sent a "Final Demand for Payment" to the Ulster County Clerk's Office.  The document demands payment of $141,000,000.00 and states that payment should be sent to defendant Steinhilber.   This demand was part of a series of documents sent to plaintiff Ulster County.

54.    Also sent with the September 21, 2009 Demand was an "Affidavit of Notary Presentment" averring that defendant Steinhilber had previously sent the documents via Registered mail.  Upon information and belief, the previous mailing occurred on August 24, 2009.

9

55.    On October 6, 2009, defendant Richard Ulloa filed or caused to be filed with the Washington State Department of Licensing a UCC Financing Statement ("UCC Statement") purporting to hold a lien against plaintiff County of Ulster in the amount of $2.82 Billion Dollars. The lien states that it will be served on all financial institutions and applies to all bank accounts, real estate, securities and other assets.

56.    On or about February 12, 2010, defendant Richard Ulloa filed or caused to be filed with the New York State Department of State a UCC Statement purporting to hold a lien against plaintiff County of Ulster in the amount of $2.82 Billion Dollars. The lien states that it will be served on all financial institutions and applies to all bank accounts, real estate, securities and other assets. A copy of the filing is attached hereto as Exhibit "E".

57.    The UCC Statement filed by defendant Richard Ulloa against the County of Ulster contains a "Notice of Claim of Maritime Lien" notarized by defendant Cairo-Davis.

58.    Upon information and belief, the lien against plaintiff County of Ulster was filed in retaliation for the rejection of a purported deed by the Ulster County Clerk's Office. The "lien" was filed as part of a pattern of harassment against plaintiff County of Ulster.

59.    Consistent with pattern of behavior noted above, on or about November 9, 2009, plaintiff Havranek received a document titled "Administrative Affidavit of Specific Negative Averment, Opportunity to Cure and Counterclaim" from defendant Richard Ulloa.

60.     The document sought to order plaintiff Havranek to record a rejected "deed" offered for filing by defendant Richard Ulloa, present a court order showing that the county attorney could reject such a filing or pay damages to defendant Richard Ulloa totaling several million dollars.  These documents were sent via registered mail.

61.     Also on or about February 18, 2010, defendant Richard Ulloa sent or caused to be sent a "First Notice of Fault and Demand for Payment" to plaintiff Havranek demanding payment of $42,000,000.00 as "damages" related to "continued trespass". The document further directs that payment be sent to defendant Cairo-Davis for delivery to defendant Richard Ulloa.  The accompanying "Affidavit of Notary Presentment" avers that the document was sent via first class mail.

62.     Another incident relating to defendant Richard Ulloa and plaintiff Ulster County occurred on November 2, 2009 when plaintiff Katatsky, then an employee of the Ulster County Health Department, was conducting a site inspection in Marbletown, New York.  During the inspection, plaintiff Katatsky was accosted by defendant Richard Ulloa, who alleged that plaintiff Katatsky had parked her County vehicle on his property. Plaintiff Katatsky was frightened and called 911 to assist her in the situation. Prior to an officer arriving, defendant Richard Ulloa left the area.

63.     On November 12, 2009, plaintiff Katatsky received a document titled "Administrative Affidavit of Specific Negative Averment, Opportunity to Cure and Counterclaim" from defendant Richard Ulloa.  A copy of this document is attached hereto as Exhibit "F".

11

64.     The document made various allegations against plaintiff Katatsky and sought to require her to provide a court order allowing her access to the land in question or pay millions of dollars and penalties. The document is signed by defendant Richard Ulloa and was mailed to plaintiff Katatsky by registered mail.

65.     On or about February 18, 2010, defendant Richard Ulloa sent or caused to be sent a document titled "First Notice of Fault and Demand for Payment" to plaintiffs Katasky and Veytia. The document demands payment of $187,000,000.00 from Plaintiffs Katasky and Veytia as "damages" allegedly due to "continued trespass". The document further directs that payment be sent to defendant Cairo-Davis for delivery to defendant Richard Ulloa. Upon information and belief, this document was sent via U.S. Mail.

66.     On or about January 6, 2010, defendant Richard Ulloa was charged with violations of New York Vehicle and Traffic Law Sections 511(1)(a) (Aggravated Unlicensed Operation in the Third Degree), 402(4) (Improper vehicle plates), 306(b) (Uninspected Motor Vehicle), and 401(1)(a) (Unregistered Motor Vehicle).   The traffic stop occurred in Ulster County.

67.     In response and in retaliation therefor and in accordance with the pattern noted throughout, defendant Richard Ulloa sent or caused to be sent to plaintiff County of Ulster, among others, documents titled "Specific Affidavit of Negative Averment, Opportunity to Cure, and Counterclaim" seeking payment of $150,000, among other things. The document was notarized by defendant Cairo-Davis as was the attached "Affidavit of Notary Presentment" which avers that the documents were sent by

12

registered mail to the Ulster County Sheriff's Office. The envelope that the documents arrived in indicates the documents were mailed from Stone Ridge, New York.

### iii. **Defendant Richard Ulloa and plaintiff Town of Ulster**

68.     On March 1, 2009, defendant Richard Ulloa was the subject of a traffic stop effected by Town of Ulster Police Officer Goodwin. Defendant Richard Ulloa refused to identify himself during the traffic stop and was taken before Town Justice Kesick. Defendant Ulloa was ticketed for Aggravated Unlicensed Operation in the Third Degree (N.Y. Vehicle and Traffic law § 511(1A)). Defendant Richard Ulloa was later arrested related to this charge.

69.     In retaliation for the charges against him, on or about July 7, 2009, defendant Richard Ulloa drafted and later sent a document titled "Opportunity to Cure" to plaintiffs Town of Ulster, and others. The document demands the plaintiff Town of Ulster pay defendant Richard Ulloa millions of dollars. The document was mailed from the Hurley, New York Post Office on July 28, 2009.

70.     On or about August 24, 2009, defendant Richard Ulloa sent a "Demand for Payment" to plaintiff Town of Ulster, and others. The document demands payment in the amount of $176,000,000.00 with payment to be sent to defendant Richard Ulloa care of defendant Davis. The document was sent to plaintiffs Town of Ulster via registered mail.

71.     On or about October 21, 2009, defendant Richard Ulloa sent a "Final Demand for Payment" to plaintiff Town of Ulster, and others. The document demanded payment in the amount of $176,000,000.00 to be sent to defendant Ulloa care of

defendant Cairo-Davis.  This demand was sent via regular mail on October 23, 2009 with the return addressed listed as that of defendant Davis.

72.     On or about February 12, 2010, Defendant Richard Ulloa filed or caused to be filed with the New York State Department of State a UCC Financing Statement listing the Town of Ulster and Ulster Town Court as debtors.  Defendant Richard Ulloa is named as the secured creditor on the document.  The document lists the debt purportedly owed by Plaintiff Town of Ulster as $5,280,000.00.  A copy of this document (Filing Number 201002120082446) is attached hereto as Exhibit "G".

73.     Also in response to the charges related above, on or about April 21, 2009, defendant Richard Ulloa filed a lawsuit in Ulster County alleging that plaintiffs Town of Ulster, Kesick and others had violated various laws in the arrest and detention of Ulloa.  A motion to dismiss this case was granted in January 2010 in Supreme Court, Ulster County, by Judge O'Connor.

74.     None of the "liens", "UCC Statements" or other documents sent, served or filed by defendants had any basis in fact and were fraudulent.

75.     Additionally, the documents sent by the above noted Defendants were intended to harass and/or extort the subjects thereof and harm, impair or inhibit the functions of the municipal subdivisions and its employees and were part of a pattern of racketeering by a criminal enterprise in furtherance of a scheme to defraud.

### B.    Defendants Burfeindt, Parenteau, Tompkins and Sara Ulloa

76.     On March 4, 2009, defendant Burfeindt was arrested by plaintiff Kalimeras and charged with violations of Sections 140.05 (Trespass) and 190.23 (False

14

Impersonation) of the Penal Law of the State of New York.  Both offenses are misdemeanors.

77.     On March 4, 2009, plaintiff Burns encountered defendant Parenteau on Chapel Hill Road in the Town of Lloyd.  Upon information and belief, Parenteau had arrived at the Chapel Hill address in a rented van.  Plaintiff Burns contacted the rental company and was informed that Parenteau was not an authorized driver of the van. Accordingly, plaintiff Burns had the van towed and took Parenteau to the Town of Lloyd Police Station pending further investigation.  As a result the encounter, defendant Parenteau was charged with a violation of New York Penal Law Section 190.23 (False Impersonation), a misdemeanor.

78.     On May 8, 2009, defendant Burfeindt was arrested on a bench warrant by Officer Day of the Town of Lloyd Police Department.  At that time, defendant Burfeindt was also charged with violating Sections 205.30 (Resisting Arrest), 195.05 (Obstructing Governmental Administration in the Second Degree), and 215.55 (Bail Jumping in the Third Degree) of the Penal Law of the State of New York, each of which are misdemeanor violations.

79.     Shortly thereafter, defendants Burfeindt and Parenteau began a pattern of harassing and attempted extortion towards plaintiffs, including, but not limited to filing purported maritime liens and UCC filings containing fraudulent statements asserting that plaintiffs owed defendants amounts several million dollars.  Upon information and belief, the liens and UCC filings were not only frauds, but part of a course of intimidation by defendants and the others in the enterprise described below to hinder plaintiffs`

15

enforcement of the laws of the State of New York and interrupt or otherwise negatively affect the daily operations of the governmental subdivision plaintiffs.

80.     To wit: as part of a pattern of racketeering by a criminal enterprise and in furtherance of a scheme to defraud plaintiffs, defendants Burfeindt, Parenteau, Sara Ulloa and Tompkins, with the assistance of some or all of the remaining defendants, began sending and filing the fraudulent notices, liens and UCC Financing Statements noted below.

81.     On or about September 24, 2009, defendant Burfeindt, with the assistance of defendant Sara Ulloa, sent a "Demand for Payment" to plaintiffs Town of Lloyd, Day, Rizzo, Blume and Martuscello, demanding payment in the amount of $2,304,000,000.00. According to her "Affidavit of Notary Presentment", this document was placed in the mails by defendant Sara Ulloa and sent by certified mail.

82.     On or about October 7, 2009, defendant Burfeindt, with the assistance of defendant Sara Ulloa, sent the above-named plaintiffs a "Second Demand for Payment" seeking the same amount.  According to her "Affidavit of Notary Presentment", defendant Sara Ulloa mailed this document via certified mail.

83.     On or about October 20, 2009, defendant Burfeindt, with the assistance of defendant Sara Ulloa, mailed a "Final Demand for Payment" to the above-named plaintiffs. According to her "Affidavit of Notary Presentment", defendant Sara Ulloa mailed this document via certified mail.

84.     Included with the October 20, 2009 "Demand for Final Payment", was a fictitious judgment stating that defendant Burfeindt had a valid judgment against the

above-named plaintiffs in the amount of $73,612,800,000.00. The "judgment" was

mailed to plaintiffs by defendant Raymond Tompkins, who sent the documents from the

Poughkeepsie New York Post Office.

85.     Defendant Parenteau also sent a "Demand for Payment" to the Town of

Lloyd that was dated September 24, 2009. Also named on the document were plaintiffs

Rizzo, Blume and Martuscello. Said document demands payment of $1,961,000,000.00

and states that payment should be sent to defendant Sara Ulloa.

86.     Included with the September 24, 2009 Demand for Payment was an

"Affidavit of Notary Presentment" stating that defendant Parenteau had verified the

contents of the documents. This document further states that defendant Sara Ulloa

mailed the documents via registered mail, return receipt.

87.     On or about October 7, 2009, a "Second Notice of Fault and Demand for

Payment" was sent to Town of Lloyd naming the same plaintiffs by defendant Parenteau

with assistance from defendant Sara Ulloa. Defendant Sara Ulloa averred that she sent

the Second Demand for Payment via certified mail, return receipt.

88.     On or about October 27, 2009, a "Final Demand for Payment" was sent to

Town of Lloyd naming the same plaintiffs by defendant Parenteau with assistance from

defendant Sara Ulloa.

89.     On November 20, 2009, defendant Jeffrey-Charles Burfeindt filed a

purported Maritime Lien with the New York State Department of State. A copy of the

document is attached hereto as Exhibit "H". The "Lien" names plaintiffs Kalimeras,

Burns, Cohen, Ackert, Rizzo, Martuscello and Town of Lloyd as the victims of the

17

"lien". The "Lien" is signed by defendant Burnfeindt and directs correspondence to defendant Parenteau in Guilford, New York.

90.     Included with the "Lien" is a "Certificate of Service by Mail" which avers that the fraudulent document was sent by defendant Parenteau by giving it to a postal clerk in the Sherburne, New York Post Office. The "Lien" was sent return receipt.

91.     Included with what was called a "Maritime Lien", was a "UCC Financing Statement" (hereinafter "UCC Statement") naming Town of Lloyd as a debtor and plaintiffs Day, Rizzo, Martuscello, Ackert, Shuman as additional debtors.

92.     The UCC Statement asserts a lien in the amount of $73,612,800,000.00 against the debtor's and additional debtors' assets including bank accounts. retirement funds, real estate, stock and bonds and insurance polices to name just a few.

93.     Also on November 20, 2009, defendant Parenteau filed with the New York State Department of State a "Maritime Lien" and "UCC Financing Statement" against Town of Lloyd and plaintiffs Burns, Rizzo, Martuscello, Kalimeras, Cohen, and Ackert claiming a lien in the amount of $62,653,950,000.00 against the debtor's and additional debtors' assets including bank accounts. retirement funds, real estate. stock and bonds and insurance polices, among other things.

94.     Additional nonsensical documents were included with the "Maritime Lien" and UCC Statement and are included in Exhibit "H", including evidence that the documents were "witnessed" by defendant Richard Ulloa.

95.     A document that accompanied defendant Parenteau's alleged Lien and UCC Statement states it was sent from the Harrison, New Jersey Post Office.

18

96.     On or about March 27, 2010, defendant Parenteau, on behalf of defendant

Burfeindt, sent a document titled "Notice of Default for Statement of Issues" to Ulster

County Executive Michael Hein via certified mail.  Said document claims that Ulster

County is in default regarding a "Notice of Fault" sent to the County via certified mail on

March 20, 2010.  The document was "witnessed" by defendant Tompkins.

97.     Also on or about March 27, 2010, defendant Parenteau, on behalf of

defendant Burfeindt, sent a document denominated "Notice of Default and Statement of

Issues" to plaintiff Postupack via certified mail.  The document was witnessed by

defendant Tompkins.  Accompanying the document noted above, among other things,

was an "invoice" totaling $1,093,000,000.00.  Upon information and belief, these

documents were sent via certified mail from the Smyrna New York Post Office.  Upon

information and belief, the invoice and accompanying documents were sent in retaliation

for a foreclosure proceeding instituted by Hudson Valley Federal Credit Union.

98.     None of the "liens", "UCC Statements" or other documents sent, served or

filed by defendants had any basis in fact and all are fraudulent.

99.     Additionally, the documents sent by the above noted defendants were

intended to harass and/or extort the subjects thereof and harm, impair or inhibit the

functions of the municipal subdivisions and its employees and were part of a pattern of

racketeering by a criminal enterprise in furtherance of a scheme to defraud.

100.    In addition to the aforementioned filings, defendant Parenteau filed suit in

the Northern District of New York (Civil Case No.:  09-cv-00869) against Town of Lloyd

and plaintiffs Burns, Rizzo, Martuscello, Kalimeras, Cohen and Ackert.  That case is

currently before the Second Circuit Court of Appeals after a decision to dismiss most, but not all, of the defendants.

## C.    Defendants' Abuse of Process

101.    During and subsequent to defendants' efforts to extort and harass plaintiffs through the fraudulent course of conduct noted above, defendants filed at least nine (9) frivolous lawsuits against plaintiffs over the course of the past year.

102.    Each of the lawsuits filed against plaintiffs have challenged the arrests of defendants Ulloa, Burfeindt, and Parenteau's in the Town of Lloyd, Town of Rosendale and Town of Ulster, the jurisdiction of these municipalities and the employees therein to effect such arrests, and have sought orders from the courts to enjoin their criminal prosecutions in the respective municipalities.

103.    Specifically, defendant Parenteau filed an action for Mandamus in New York State Supreme Court (Index No. 09-1945) seeking a court order that the Town of Lloyd Justice Court cease and desist its criminal prosecution against him.

104.    Defendant Parenteau's action was dismissed *sua sponte* Judge Richard M. Platkin on April 30, 2009.

105.    Defendant Richard Ulloa filed a lawsuit against plaintiffs Town of Rosendale and Justice Vosper, among others. Therein, defendant Ulloa filed a document styled as a "criminal complaint" alleging. among other things. that he had been kidnapped by plaintiffs. The civil case number for this suit is 09-cv-682. This suit has since been dismissed.

20

106.   Similarly, defendant Burfeindt, under the name Jeffrey-Charles, filed a Petition for Writ of Mandamus in New York State Supreme Court (Index No. 09-1946) seeking an order that the Town of Lloyd cease and desist its criminal prosecution of defendant.

107.   Defendant Burfeindt's Petition was dismissed *sua sponte* by Judge Gerald W. Connolly on May 13, 2009.

108.   Defendant Richard Ulloa filed a similar lawsuit in New York State Supreme Court (Index No. 09-1906) against the Town of Ulster and the Town of Ulster Court claiming that his arrest for Aggravated Unlicensed Operation of a Motor Vehicle amounted to kidnapping, as well as fraud, racketeering, and money laundering.

109.   In this instance, all parties appeared through their respective counsel and the lawsuit was dismissed on motion on January 12, 2010.

110.   Following the failed lawsuits in New York State Supreme Court, defendants began attempting to remove their criminal prosecutions to Federal Court.

111.   Following the failed lawsuits in New York State Supreme Court, defendants began attempting to remove their criminal prosecutions to Federal Court.

112.   On June 15, 2009, defendant Ulloa filed a Notice of Removal in the United States District Court for the Northern District of New York, Civil Case No.: 09-682, which sought to remove his pending criminal prosecution in the Town of Rosendale.

113.   Defendant Ulloa thereafter filed an Emergency Motion for a Protective Order in the aforementioned case seeking to enjoin Town Justice Vosper from setting bail and requiring defendant to submit to a psychiatric evaluation.

114.    On July 15, 2009, Judge David N. Hurd denied defendant's Motion and *sua sponte* dismissed defendant's action.

115.    Defendant Ulloa filed a secondary Notice of Removal with the Northern District of New York on June 15, 2009, Civil Case No. 09-683, seeking to remove his pending criminal prosecution in the Town of Ulster.

116.    On August 26, 2009, Magistrate Judge Treece issued a Report, Recommendation, and Order recommending that the matter be remanded to State Court. The Report, Recommendation, and Order was adopted by Judge David N. Hurd on September 14, 2009.

117.    On June 15, 2009, defendant Burfeindt filed a Notice of Removal in the Northern District of New York, Civil Case No. 09-684, which sought to remove his pending criminal prosecution in the Town of Lloyd.

118.    By Summary Order filed July 16, 2009, Judge Gary L. Sharp *sua sponte* remanded the action to State Court.

119.    Thereafter, defendant Burfeindt filed Amended Notices of Removal and Motions for Reconsideration.  The Court ultimately issued five (5) Orders denying defendant's duplicative requests.

120.    Subsequent to filing the notices referenced above, defendant Burfeindt filed a "Declaration in the Nature of an Affidavit of Specific Negative Averment, Opportunity to Cure, and Counterclaim" asserting damages against the District Court for dismissal of his action.

121.    Defendant Burfeindt also appealed the dismissal to the Second Circuit, who denied the appeal on January 11, 2010.

122.    Similarly, defendant Parenteau also filed a Notice of Removal in the Northern District of New York, Civil Case No. 09-681, on June 15, 2009, seeking to remove his pending criminal prosecution in the Town of Lloyd.

123.    A Report, Recommendation, and Order recommending that the matter be remanded to State Court was issued by Magistrate Judge David Homer on June 29, 2009. The Report, Recommendation and Order was adopted by Judge Glenn T. Suddaby on July 28, 2009 advising defendant that any appeal taken would not be taken in good faith.

124.    Defendant filed a Notice of Appeal on September 17, 2009 which is still pending in the Second Circuit.

125.    On August 3, 2009, defendant Burfeindt filed a "Verified Complaint and Counterclaim" in the Northern District of New York, Civil Case No. 09-869, against the Town of Lloyd, Town Justice Rizzo, Court Clerk for the Town of Lloyd Justice Court Amy Shuman, Assistant District Attorney Daniel M. Martuscello, and Town of Lloyd Police Officers Kalimeras, Burns, Cohen, Day, and Ackert.

126.    On September 8, 2009, Judge Glenn T. Suddaby *sua sponte* dismissed defendant's Complaint against a majority of the parties and Ordered that defendant provide the status of this pending criminal prosecution in order to ascertain whether defendant Burfeindt's Complaint was otherwise ripe.

127.    Defendant Burfeindt failed to adhere to the Court's Order and filed a Notice of Appeal on September 23, 2009.  The appeal is currently pending in the Second Circuit.

128.    On February 2, 2010, defendant Burfeindt filed another lawsuit, naming plaintiff Postupack and others as defendants.  The suit challenges a foreclosure by Mid-Hudson Valley Federal Credit Union.  Motions to Dismiss are currently pending before the Hon. Judge Sharpe.

## RICO ALLEGATIONS

129.    Defendants are members of an association-in-fact.

130.    Defendants' association-in-fact has a purpose, namely to disrupt the administration of federal, state and/or local government through a pattern of wire and mail fraud, harassment and extortion.

131.    Defendants, as members of the association-in-fact, share a relationship with the other members, as evinced by the names of some defendants appearing on other defendants supposed liens and UCC filings and the use of common forms, among other things.

132.    Defendants' association-in-fact has been existence for a period sufficient to permit defendants to pursue the enterprises purpose.  Defendants' association-in-fact existed as of the date of the filing of this Complaint.

133.    Defendants participated and/or managed the affairs of the enterprise by drafting liens and UCC Filings, serving and/or filing said documents, mailing and/or wiring said documents, witnessing and attesting to the truthfulness of said documents.

134.    Defendants' enterprise is ongoing.

135.    But-for this suit, defendants' criminal activity would continue beyond the period of the predicate acts alleged herein.

24

136.   Alternatively, upon information and belief, defendants' enterprise has committed a series of predicate acts over a substantial period of time.

137.   The alleged predicate acts constitute violations of 18 U.S.C. § 1341, relating to mail fraud, and 18 U.S.C. § 1343, relating to wire fraud.

138.   Related to the above noted predicate acts, defendants engaged in a scheme to defraud plaintiffs of money and/or property and used the mails and/or wires in furtherance of that scheme.  Defendants' fraudulent misrepresentations were material and made with fraudulent intent.

139.   The fraudulent misrepresentations made by defendants were relied upon as truthful by the New York Department of State, the Department of Licensing of the State of Washington, and the State of Georgia, all of whom filed the liens in their respective records.

140.   Additionally, upon information and belief, a credit agency or agencies have relied on the fraudulent statements made by defendants and some or all of plaintiffs' credit histories have been negatively impacted.

141.   The predicate acts detailed above are related in that they share a common purpose, such as disrupting the administration of local government.  Additionally, the predicate acts alleged above have the purpose of harassing, defrauding and attempting to extort employees and elected officials of local governments into allowing defendants to run afoul or otherwise ignore both federal and state law.

142.   The predicate acts stated above share participants.  Specifically, defendant Richard Ulloa is named on documents sent and/or drafted by defendants Burfeindt and

25

Parenteau.  Further, defendant Sara Ulloa attests to the truth of filings by defendant

Parenteau and Burfeindt. Additional examples of common participants in predicate acts

will be included in plaintiff's RICO Statement submitted in accordance with Northern

District of New York General Order No. 14.

143.    The predicate acts also share common victims.

144.    The predicate acts noted above share a common methodology as well.

Defendants have used the same types of forms against plaintiffs, either Maritime Liens or

UCC filings.  Further, plaintiffs have generally sent a copy of the false documents to

plaintiff prior to filing those documents seeking payments in the billions of dollars.

145.    Defendants' racketeering activities have caused damage to plaintiffs'

business and/or property interests, including but not limited to, injury to plaintiffs' credit

histories and ability to obtain loans, the loss of employee productivity including loss of

productivity related to review of documents filed by defendants, meetings related to the

documents by the municipal subdivision plaintiffs, and incurring costs and fees related to

the instant suit.

146.    Plaintiffs' damages have been sustained by reason of defendants' conduct,

and that conduct is both the factual and legal, or proximate cause of plaintiffs' injuries.

### FIRST CAUSE OF ACTION

### [VIOLATION OF 18 U.S.C. § 1962(c) AGAINST DEFENDANTS]

147.    Plaintiffs repeat and reallege paragraphs "1" through "148" as if set forth

fully herein.

26

148.    This cause of action is predicated upon the provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et. seq.*, and 18 U.S.C. §§ 1341 and 1343 pertaining to mail and wire fraud.

149.    All defendants are persons as defined by the RICO statute.

150.    The defendants named in this cause of action are part of a RICO enterprise as defined by 18 U.S.C. § 1961.

151.    That defendants' enterprise is an association-in-fact with a purpose, longevity and relationship among defendants as detailed above.

152.    That defendants have participated and/or managed or are participating in and/or managing the enterprise noted above.

153.    That, as detailed above, defendants engaged in a "pattern of racketeering" by filing several fraudulent liens and UCC filings against plaintiffs.

154.    The serving and filing of the supposed liens and UCC filings at issue constitutes a racketeering activity because the liens and UCC filings are frauds and violate 18 U.S.C. §1341 and/or §1343 since the mails or federal wires were used to serve and/or file said documents.

155.    The liens and UCC Filings are part of a scheme by defendants to defraud plaintiffs to obtain money and property from plaintiffs by false pretenses and misrepresentations.

156.    The false pretenses and misrepresentations employed by defendants were material and accomplished with a fraudulent intent.

157.    The actions of the aforementioned enterprise affect and/or have affected interstate commerce.

158.    Plaintiffs' business and/or property interests have been injured by defendants' racketeering activity.

159.    As a result of defendants' pattern of racketeering activity as detailed above, plaintiffs are entitled to an award of treble their compensatory damages, plus the costs of this suit, including attorneys' fees, pursuant to 18 U.S.C. § 1964(c).

160.    As a result of defendants' wrongful, malicious and illegal acts, plaintiffs are also entitled to recover from defendants punitive damages in an amount to be determined by the trier of fact.

## SECOND CAUSE OF ACTION

### [RICO Conspiracy]

161.    Plaintiffs repeat and reallege paragraphs "1" through "162" as if set forth fully herein.

162.    This cause of action is predicated upon the provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, et. seq., and 18 U.S.C. §§ 1341 and 1343 pertaining to mail and wire fraud.

163.    All defendants are persons as defined by the RICO statute.

164.    The defendants named in this cause of action are part of a RICO enterprise as defined by 18 U.S.C. § 1961.

165.    That defendants' enterprise is an association-in-fact with a purpose, longevity and relationship among defendants as detailed above.

28

166.     That defendants have participated and/or managed or are participating in and/or managing the enterprise noted above.

167.     Each of the defendants knew of and agreed to the general criminal objective of the scheme jointly undertaken by the remaining defendants.

168.     That, as detailed above, defendants engaged in a "pattern of racketeering" by filing several fraudulent liens and UCC filings against plaintiffs.

169.     The serving and filing of the supposed liens and UCC filings at issue constitutes a racketeering activity because the liens and UCC filings are frauds and violate 18 U.S.C. §1341 and/or §1343 since the mails or federal wires were used to serve and/or file said documents.

170.     The liens and UCC Filings are part of a scheme by defendants to defraud plaintiffs to obtain money and property from plaintiffs by false pretenses and misrepresentations.

171.     The false pretenses and misrepresentations employed by defendants were material and accomplished with a fraudulent intent.

172.     The actions of the aforementioned enterprise affect and/or have affected interstate commerce.

173.     Plaintiffs' business and/or property interests have been injured by defendants' racketeering activity.

174.     As a result of defendants' pattern of racketeering activity as detailed above, plaintiffs are entitled to an award of treble their compensatory damages, plus the costs of this suit, including attorneys' fees, pursuant to 18 U.S.C. § 1964(c).

29

175.   As a result of defendants' wrongful, malicious and illegal acts, plaintiffs are also entitled to recover from defendants punitive damages in an amount to be determined by the trier of fact.

## THIRD CAUSE OF ACTION

### [Injunctive Relief Under 18 U.S.C. § 1964(a)]

176.   Plaintiffs repeat and reallege paragraphs "1" through "177" as if set forth fully herein.

177.   This cause of action is predicated upon the provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961. *et. seq.*, and 18 U.S.C. §§ 1341 and 1343 pertaining to mail and wire fraud.

178.   All defendants are persons as defined by the RICO statute.

179.   The defendants named in this cause of action are part of a RICO enterprise as defined by 18 U.S.C. § 1961.

180.   That defendants' enterprise is an association-in-fact with a purpose, longevity and relationship among defendants as detailed above.

181.   That defendants have participated and/or managed or are participating in and/or managing the enterprise noted above.

182.   That, as detailed above, defendants engaged in a "pattern of racketeering" by filing several fraudulent liens and UCC filings against plaintiffs.

183.   The serving and filing of the supposed liens and UCC filings at issue constitutes a racketeering activity because the liens and UCC filings are frauds and

violate 18 U.S.C. §1341 and/or §1343 since the mails or federal wires were used to serve and/or file said documents.

184.   The liens and UCC Filings are part of a scheme by defendants to defraud plaintiffs to obtain money and property from plaintiffs by false pretenses and misrepresentations.

185.   The false pretenses and misrepresentations employed by defendants were material and accomplished with a fraudulent intent.

186.   The actions of the aforementioned enterprise affect and/or have affected interstate commerce.

187.   Plaintiffs' business and/or property interests have been injured by defendants' racketeering activity.

188.   Plaintiffs' business and property interest will continued to be injured unless the Court issues an order requiring that defendants divest themselves from the enterprise described above, imposing restrictions on the future activities of the enterprise including restraining any additional liens, UCC filings or other such similar item from being filed without prior review by the Court and for any other further relief the Court deems just and proper.

## PENDANT STATE LAW CLAIMS

## FOURTH CAUSE OF ACTION

### [Abuse of Process]

189.   Plaintiffs repeat and reallege paragraphs "1" through "190" as if set forth fully herein.

31

190.   At all times relevant herein, defendants knew, or should have known, that they did not have a valid maritime lien, judgment or meritorious cause of action against plaintiffs.

191.   Despite the lack of a valid lien or judgment, defendants willfully and maliciously filed and served UCC filings and/or Maritime Liens with the Washington State Department of Licensing, the New York State Department of State and the State of Georgia, and filed frivolous lawsuits in federal and state court for the sole purpose of inflicting harm upon the plaintiffs.

192.   The aforementioned actions by defendants were accomplished without economic, legal or social excuse or justification.

193.   By willfully and maliciously filing and serving the purported liens and UCC filings with the Washington State Department of Licensing, the New York State Department of State and the State of Georgia and filing frivolous lawsuits in federal and state courts defendants sought a collateral advantage and corresponding detriment to plaintiffs.

194.   The above mentioned actions of defendants were outside the legitimate ends of the economic and/or legal process of filing and serving a UCC filing statement, maritime lien, complaint or false judgment.

195.   The aforementioned actions of defendants constitute abuse of process.

196.   As a result of defendants' abuse of process. plaintiffs have suffered special damages in the form of negative impacts on their respective credit reports and legal defense costs, among other things.

32

197.    As a result of defendants' abuse of process, plaintiffs are entitled to injunctive relief.

198.    As a result of defendants' abuse of process, plaintiffs are entitled to punitive damages.

## FIFTH CAUSE OF ACTION

### [Prima Facie Tort]

199.    Plaintiffs repeat and reallege paragraphs "1" through "200" as if set forth fully herein.

200.    At all times relevant, defendants knew, or should have known, that they did not have a valid cause of action, Maritime Lien and/or judgment against plaintiffs.

201.    Despite the foregoing, defendants willfully and maliciously filed and served UCC filings with the Washington State Department of Licensing, the New York State Department of State and the State of Georgia and filed lawsuits in federal and state courts with the sole purpose of inflicting harm on plaintiffs.

202.    The aforementioned actions by defendants were done without economic, legal or social excuse or justification.

203.    By willfully and maliciously filing and serving the purported liens and UCC filings with the Washington State Department of Licensing, the New York State Department of State and the State of Georgia and filing lawsuits in federal and state courts defendants sought a collateral advantage and corresponding detriment to plaintiffs.

204.    The above mentioned actions of defendants were outside the legitimate ends of the economic and/or legal process of filing and serving a UCC filing statement, maritime lien, complaint or false judgment.

205.    The foregoing actions by defendants constitute prima facie tort.

206.    As a result of defendants' abuse of process, plaintiffs have suffered special damages in the form of negative impacts on their respective credit reports and defense costs, among other things.

207.    As a result of defendants' abuse of process, plaintiffs are entitled to injunctive relief.

208.    As a result of defendants' abuse of process, plaintiffs are entitled to punitive damages.

**WHEREFORE**, plaintiffs respectfully pray for judgment in their favor against defendants as follows:

A.    Compensatory damages in an amount to be determined by the trier of fact;

B.    Treble damages as determined by the trier of fact pursuant to 18 U.S.C. § 1964(c);

C.    An order declaring all liens, UCC statements and any other such similar item filed by defendants null and void and further directing that any lien UCC statements  or other such similar item be vacated and removed from the public record;

D.    An order restraining defendants from filing any liens, UCC Statements, lawsuits or any other such similar documents without prior court approval.

34

E.     Punitive damages in an amount to be determined by the trier of fact;

F.     Attorneys' fees pursuant to 18 U.S.C. § 1964(c);

G.     Costs and fees associated with this action;

H.     Such other and further relief as the Court may deem just or proper.

Dated: April 21, 2010

By: _____
John W. Bailey
Bar Roll No.:  101069
Bailey, Kelleher & Johnson, P.C.
5 Pine West Plaza, Suite 507
Washington Avenue Extension
Albany, New York  12205

35