UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

COUNTY OF ULSTER, NEW YORK
THE TOWN OF LLOYD, NEW YORK,
TOWN OF ROSENDALE, NEW YORK,
TOWN OF ULSTER, NEW YORK,
DARRELL DAY, EUGENE J. RIZZO, DANIEL
M. MARTUSCELLO, HEATHER BLUME, ANTHONY
KALIMERAS, KATHLEEN BURNS, JEFF COHEN,
DAVID M. ACKERT, AMY SHUMAN, ROBERT
VOSPER, JOSHUA CALIENDO, BEATRICE
HAVRANEK, EILEEN B. KATATSKY,
NINA POSTUPACK, NEREIDA VEYTIA,

**PLAINTIFFS' CIVIL
RICO STATEMENT**

Civil Action No.:
1:10-cv-00467

(TJM/DRH)

Plaintiffs,

-against-

RICHARD ENRIQUE ULLOA, SARA ULLOA,
JEFFREY-CHARLES BURFEINDT,
ED-GEORGE PARENTEAU, RAYMOND TOMPKINS,
KATHERINE A. CAIRO DAVIS, KATHY STEINHILBER,

Defendants.

---

Plaintiffs, by and through their attorneys, Bailey, Kelleher & Johnson, P.C., as and

for their Civil RICO Statement, state as follows:

1.      State whether the alleged unlawful conduct is in violation of 18

U.S.C. Sections 1962(a), (b), (c), and/or (d).

**RESPONSE**:  The alleged unlawful conduct is in violation of 18 U.S.C. §

1962(c) and/or (d).

2.      List each defendant and state the alleged misconduct and basis of liability

of each defendant.

**RESPONSE:**  The defendants, their alleged misconduct and basis of liability are as follows:

a.      Richard Enrique Ulloa:  Richard Ulloa, as a member of an association-in-fact, committed mail and/or wire fraud when he sent or caused to be sent the mailings or wires containing materially false statements or misrepresentations detailed herein in an effort to obtain money or property as part of a pattern of racketeering by a criminal enterprise in furtherance of a scheme to defraud.  Specifically, Richard Ulloa mailed "criminal complaints", "invoices" "demands for payment" and "judgments" that contained materially false statements, including, but not limited to, that several plaintiffs owed Richard Ulloa money for various activities or governmental functions.  Richard Ulloa then filed judgments and liens based upon the aforementioned "invoices", "demands for payment" and other documents as part of a scheme to defraud plaintiffs' by wrongfully obtaining an interest in their property in violation of 18 U.S.C. § 1341 & 1343.

b.      Ed-George Parenteau:  Defendant Parenteau as a member of an association-in-fact, committed mail and/or wire fraud when he sent or caused to be sent the mailings or wires containing material false statements and misrepresentations detailed herein in an effort to obtain money or property as part of a pattern of racketeering by a criminal enterprise in furtherance of a scheme to defraud.  Specifically, Parenteau mailed "criminal complaints", "invoices" "demands for payment" and "judgments" that contained materially false statements, including, but not limited to, that several plaintiffs owed Parenteau money for various activities or governmental functions. Parenteau then

filed judgments and liens based upon the aforementioned "invoices", "demands for payment" and other documents as part of a scheme to defraud plaintiffs' by wrongfully obtaining an interest in their property in violation of 18 U.S.C. § 1341 & 1343.

        c.     Jeffrey-Charles Burfeindt:  Defendant Burfeindt, as a member of  an association-in-fact, committed mail and/or wire fraud when he sent or caused to be sent the mailings or wires containing material false statements and misrepresentations detailed herein in an effort to obtain money or property as part of a pattern of racketeering by a criminal enterprise in furtherance of a scheme to defraud.  Specifically, Burfeindt mailed "criminal complaints", "invoices" "demands for payment" and "judgments" that contained materially false statements, including, but not limited to, that several plaintiffs owed Burfeindt money for various activities or governmental functions.  Burfeindt then filed judgments and liens based upon the aforementioned "invoices", "demands for payment" and other documents as part of a scheme to defraud plaintiffs' by wrongfully obtaining an interest in their property in violation of 18 U.S.C. § 1341 & 1343.

        d.     Raymond Tompkins:  Upon information and belief, defendant Tompkins has assisted in the creation and/or execution and/or "witnessed" the fraudulent "criminal complaints", "invoices", "demands for payment", "judgments" and/or "liens" filed by Richard Ulloa, Parenteau and Burfeindt.  Accordingly, it is alleged that defendant Tompkins is a member or agent of the association-in-fact alleged herein.  Additionally, defendant Tompkins has placed some of the documents in the mail and thus committed or conspired to commit mail fraud.

        e.     Sara Ulloa:  Upon information and belief, defendant Sara

Ulloa has assisted in the creation and/or execution and/or "witnessed" the fraudulent "criminal complaints", "invoices", "demands for payment", "judgments" and/or "liens" filed by Richard Ulloa, Parenteau and Burfeindt. Accordingly, it is alleged that defendant Sara Ulloa is a member or agent of the association-in-fact alleged herein. Additionally, defendant Sara Ulloa has placed some of the documents noted above in the mail and thus committed or conspired to commit mail fraud.

      3.     List the alleged wrongdoers, other than the defendant(s) listed above, and state the alleged misconduct of each wrongdoer.

      **RESPONSE:**     At this time, without the benefit of discovery, it is unknown whether the defendants listed above are the entirety of the RICO association-in-fact alleged in the Complaint. Upon information and belief, 0-3 additional individuals may be involved; however, the identity of those individuals is currently unknown to plaintiffs.

      4.     List the alleged victims and state how each victim was allegedly injured.

      **RESPONSE:**

      a.     County of Ulster: Ulster County has incurred costs and fees and lost valuable employee time as a result of the actions of defendants. Specifically, as of May 1, 2010, the County estimated its damages related thereto exceeded $13,000. Additionally, due to the lien filed against the County of Ulster, the County's ability to alienate property has been restricted or otherwise negatively impacted, its creditworthiness has been affected or otherwise negatively impacted, and its ability to obtain lines of credit, loans, etc., has been affected or otherwise negatively impacted.

b.      Town of Lloyd:  The Town of Lloyd has incurred costs and fees and lost valuable employee time as a result of the actions of defendants.  Specifically, as of March 10, 2010, the Town estimated its damages related thereto exceeded $7,000. Additionally, due to the lien filed against the Town of Lloyd, the Town's ability to alienate property has been restricted or otherwise negatively impacted, its creditworthiness has been affected or otherwise negatively impacted, and its ability to obtain lines of credit, loans, etc., has been affected or otherwise negatively impacted.

c.      Town of Rosendale:  Due to the lien filed against the Town of Rosendale, the Town's ability to alienate property has been restricted or otherwise negatively impacted, its creditworthiness has been affected or otherwise negatively impacted, and its ability to obtain lines of credit, loans, etc., has been affected or otherwise negatively impacted.

d.      Town of Ulster:  Richard Ulloa filed a lien against the Town of Ulster claiming a debt due of $5,280,000.00.  Due to the lien filed against the Town of Ulster, the Town's ability to alienate property has been restricted or otherwise negatively impacted, its creditworthiness has been affected or otherwise negatively impacted, and its ability to obtain lines of credit, loans, etc., has been affected or otherwise negatively impacted.  The Town of Ulster has also incurred costs and fees and lost valuable employee time as a result of the actions of defendants.

e.      Darrell Day:  Due to the lien filed against plaintiff Day, his ability to alienate property has been restricted or otherwise negatively impacted, his

creditworthiness has been affected or otherwise negatively impacted, and his ability to obtain lines of credit, loans, etc., has been affected or otherwise negatively impacted.

       f.     Eugene Rizzo: Due to the lien filed against plaintiff Rizzo, his ability to alienate property has been restricted or otherwise negatively impacted, his creditworthiness has been affected or otherwise negatively impacted, and his ability to obtain lines of credit, loans, etc., has been affected or otherwise negatively impacted.

       g.     Daniel Martuscello: Due to the lien filed against plaintiff Martuscello, his ability to alienate property has been restricted or otherwise negatively impacted, his creditworthiness has been affected or otherwise negatively impacted, and his ability to obtain lines of credit, loans, etc., has been affected or otherwise negatively impacted.

       h.     Heather Blume: Due to the lien filed against plaintiff Blume, her ability to alienate property has been restricted or otherwise negatively impacted, her creditworthiness has been affected or otherwise negatively impacted, and her ability to obtain lines of credit, loans, etc., has been affected or otherwise negatively impacted.

       i.     Anthony Kalimeras: Due to the lien filed against plaintiff Kalimeras, his ability to alienate property has been restricted or otherwise negatively impacted, his creditworthiness has been affected or otherwise negatively impacted, and his ability to obtain lines of credit, loans, etc., has been affected or otherwise negatively impacted.

       j.     Kathleen Burns: Due to the lien filed against plaintiff Burns, her ability to alienate property has been restricted or otherwise negatively impacted, her

creditworthiness has been affected or otherwise negatively impacted, and her ability to obtain lines of credit, loans, etc., has been affected or otherwise negatively impacted.

k.      Jeff Cohen: Due to the lien filed against plaintiff Cohen, his ability to alienate property has been restricted or otherwise negatively impacted, his creditworthiness has been affected or otherwise negatively impacted, and his ability to obtain lines of credit, loans, etc., has been affected or otherwise negatively impacted.

l.      David Ackert: Due to the lien filed against plaintiff Ackert, his ability to alienate property has been restricted or otherwise negatively impacted, his creditworthiness has been affected or otherwise negatively impacted, and his ability to obtain lines of credit, loans, etc., has been affected or otherwise negatively impacted.

m.      Amy Shuman: Due to the lien filed against plaintiff Shuman, her ability to alienate property has been restricted or otherwise negatively impacted, her creditworthiness has been affected or otherwise negatively impacted, and her ability to obtain lines of credit, loans, etc., has been affected or otherwise negatively impacted.

n.      Robert Vosper: Due to the lien filed against plaintiff Vosper, his ability to alienate property has been restricted or otherwise negatively impacted, his creditworthiness has been affected or otherwise negatively impacted, and his ability to obtain lines of credit, loans, etc., has been affected or otherwise negatively impacted.

o.      Joshua Caliendo: Due to the lien filed against plaintiff Caliendo, his ability to alienate property has been restricted or otherwise negatively impacted, his creditworthiness has been affected or otherwise negatively impacted, and his ability to obtain lines of credit, loans, etc., has been affected or otherwise negatively impacted.

p.      Beatrice Havranek:  Upon information and belief, due to the documents sent by defendants naming her as a debtor, plaintiff Havranek's creditworthiness has been affected or otherwise negatively impacted and her ability to obtain lines of credit, loans, etc., has been affected or otherwise negatively impacted.

q.      Eileen Katasky:  Plaintiff Katatsky continues to personally incur expenses and fees seeking to defend and protect herself from defendants fraudulent conduct, including incurring credit monitoring fees and legal fees and costs related thereto.

r.      Nina Postupack: Due to the lien filed against plaintiff Postupack, her ability to alienate property has been restricted or otherwise negatively impacted, her creditworthiness has been affected or otherwise negatively impacted, and her ability to obtain lines of credit, loans, etc., has been affected or otherwise negatively impacted.

s.      Nereida Veytia:  Upon information and belief, due to the documents sent by defendants naming her as a debtor, plaintiff Veytia's creditworthiness has been affected or otherwise negatively impacted and her ability to obtain lines of credit, loans, etc., has been affected or otherwise negatively impacted.

5.      Describe in detail the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim.  A description of the pattern of racketeering shall include the following information:

        a.      List the alleged predicate acts and the specific statutes which were allegedly violated;

        b.      Provide the dates of the predicate acts, the participants in the predicate acts and a description of the facts surrounding the predicate acts;

c.      If the RICO claim is based on the predicate offenses of wire fraud, mail fraud, or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P.9(b).  Identify the time, place and contents of the alleged misrepresentations, and the identity of persons to whom and by whom the alleged misrepresentations were made;

d.      State whether there has been a criminal conviction for violation of the predicate acts;

e.      State whether civil litigation has resulted in a judgment in regard to the predicate acts;

f.      Describe how the predicate acts form a "pattern of racketeering activity"; and

g.      State whether the alleged predicate acts relate to each other as part of a common plan.  If so, describe in detail.

**RESPONSE**:  The pattern of racketeering is described as follows:

a.      The predicate acts are mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343.  Specific acts are set forth in detail immediately below in Section 5(b).

b.      The dates, participants and facts surrounding the predicate acts noted directly above are as follows:

i.      Richard Enrique Ulloa committed the following predicate acts, which constituted mail and/or wire fraud:

1.      Mailing or causing to be mailed a "Criminal Complaint" sent to the Town of Rosendale on or about June 4, 2009, which included a fraudulent invoice for damages in retaliation for charges filed against Ulloa in the Town of Rosendale;

2.      Mailing or causing to be mailed a fraudulent "Criminal Complaint" sent to the Town of Rosendale on or about June 11, 2009, naming plaintiff Caliendo, which included a fraudulent invoice for damages in retaliation for charges filed against Ulloa in the Town of Rosendale;

3. Mailing or causing to be mailed a fraudulent "invoice" sent to the Town of Rosendale on or about June 27, 2009, demanding payment of over $550 million dollars for the failure to answer the "criminal complaints" noted above in retaliation for charges filed against Ulloa in the Town of Rosendale;

4. Mailing or causing to be mailed a fraudulent "invoice" sent to the Town of Rosendale on or about July 8, 2009, demanding payment for over $550 million dollars for failure to respond to the "criminal complaints" noted above in retaliation for charges filed against Ulloa in the Town of Rosendale;

5. Mailing or causing to be mailed a fraudulent "First Notice and Demand for Payment" to the Town of Rosendale, on or about July 8, 2009, for the failure to respond to the "criminal complaints" noted above in retaliation for charges filed against Ulloa in the Town of Rosendale;

6. Mailing or causing to be mailed a fraudulent "Second Notice and Demand for Payment" to the Town of Rosendale on or about August 8, 2009, demanding payment in the amount of over $550,000,000 in retaliation for charges filed against Ulloa in the Town of Rosendale;

7. Mailing or causing to be mailed a fraudulent "Final Notice and Demand for Payment" to the Town of Rosendale on or about August 20 2009, demanding payment in the amount of $550,000,000 in retaliation for charges filed against Ulloa in the Town of Rosendale;

8. Mailing or causing to be mailed a fraudulent "Declaration and Notice of Final Determination and Judgment in Nihil Dicit" to the Town of Rosendale on or about September 11, 2009, claiming a debt owed by the Town of Rosendale and plaintiffs Vosper and Caliendo in retaliation for charges filed against Ulloa in the Town of Rosendale;

9. Mailing or causing to be mailed a fraudulent "Notice of Claim of Maritime Lien" to the Town of Rosendale on or about September 21, 2009 claiming a debt due of

10

$165,215,000 in retaliation for charges filed against Ulloa in the Town of Rosendale;

10. Mailing or causing to be mailed and/or wired a fraudulent UCC Financing Statement to the Washington State Department of Licensing on or about September 24, 2009, claiming a debt due of $ 532,513,000 by plaintiff Vosper in retaliation for charges filed against Ulloa in the Town of Rosendale;

11. Mailing or causing to be mailed and/or wired a fraudulent "Notice of Claim of Maritime Lien" to the Lamar County, Georgia Superior Court Clerk's Office on or about October 19, 2009 claiming a debt due by plaintiff Vosper in retaliation for charges filed against Ulloa in the Town of Rosendale;

12. Mailing or causing to be mailed and/or wired to the New York State Department of State, a fraudulent UCC Financing Statement on or about February 10, 2010, claiming a debt due by Town of Rosendale, and plaintiffs Vosper and Caliendo in the amount of $165,215,000 in retaliation for charges filed against Ulloa in the Town of Rosendale;

13. Mailing or causing to be mailed a fraudulent "Affidavit of Specific Negative Averment, Opportunity to Cure, and Counterclaim" to the Town of Ulster on or about July 28, 2009 in retaliation for charges filed against Ulloa in the Town of Ulster;

14. Mailing  or causing to be mailed a fraudulent "First Notice of Fault and Demand for Payment" to The Town of Ulster on or about August 24, 2009 demanding payment in the amount of $176,000,000 in retaliation for charges filed against Ulloa in the Town of Ulster;

15. Mailing or causing to be mailed a fraudulent "Second Demand for Payment" to the Town of Ulster on or about September 21, 2009, demanding payment of $176,000,000 in retaliation for charges filed against Ulloa in the Town of Ulster;

11

16. Mailing or causing to be mailed a fraudulent "Final Demand for Payment" to the Town of Ulster on or about October 22, 2009 demanding payment of $176,000,000 in retaliation for charges filed against Ulloa in the Town of Ulster in retaliation for charges filed against Ulloa in the Town of Ulster;

17. Mailing or causing to be mailed a fraudulent "Notice of Final Determination and Judgment Nihil Dicit" to the Town of Ulster on or about November 10, 2009, demanding payment of $176,000,000 in retaliation for charges filed against Ulloa in the Town of Ulster;

18. Mailing or causing to be mailed a fraudulent "Notice of Claim of Maritime Lien" to the Town of Ulster in or about January 2010 in the amount of $176,000,000 in retaliation for charges filed against Ulloa in the Town of Ulster;

19. Mailing or causing to be mailed and/or wiring to the New York State Department of State a fraudulent UCC Financing Statement on or about February 10, 2010, claiming a debt owed by the Town of Ulster, plaintiff Vosper and plaintiff Caliendo in the amount of $5,280,000,000 in retaliation for charges filed against Ulloa in the Town of Rosendale;

20. Mailing or causing to be mailed to the Ulster County Clerk's Office a fraudulent "Counter Claim" on or about July 7, 2009, claiming a debt owed by the County of Ulster in retaliation for a pending foreclosure proceeding venued in Ulster County;

21. Mailing or causing to be mailed a fraudulent "Amended Affidavit of Negative Averment, Opportunity to Cure, and Counterclaim" to the Ulster County Clerk's Office on or about August 10, 2009, claiming a debt owed by the County of Ulster in retaliation for a pending foreclosure proceeding venued in Ulster County;

22. Mailing or causing to be mailed a fraudulent "Invoice" to the Ulster County Clerk's office on or about August 24, 2010, claiming a debt owed by the County of Ulster in retaliation for a pending foreclosure proceeding venued in Ulster County;

23. Mailing or causing to be mailed a fraudulent "Final Demand for Payment" to the Ulster County Clerk on or about September 10 or 21, 2009 claiming $141,000,000 due and owing in retaliation for a pending foreclosure proceeding venued in Ulster County;

24. Mailing or causing to be mailed a fraudulent "Declaration and Notice of Final Determination and Judgment Nihil Dicit" to the Ulster County Clerk's Office naming the Ulster County Clerk on or about September 28, 2009 claiming a debt due of $2,280,000,000 in retaliation for a pending foreclosure proceeding venued in Ulster County;

25. Mailing or causing to be mailed a fraudulent "Notice of Maritime Lien" to the County of Ulster on or about October 2, 2009 claiming a debt due of $2,820,000,000 in retaliation for a pending foreclosure proceeding venued in Ulster County;

26. Mailing or causing to be mailed and/or wire to the New York State Department of State a fraudulent UCC Financing Statement on or about October 6, 2009, claiming a debt owed by the County of Ulster in the amount of $2,820,000,000 in retaliation for a pending foreclosure proceeding venued in Ulster County;

27. Mailing or causing to be mailed a fraudulent "Administrative Affidavit of Specific Negative Averment, Opportunity to Cure and Counterclaim" to plaintiff Havranek on or about November 9, 2009 demanding payment for "damages" as a result of alleged trespass by former Ulster County employee Katatsky;

28. Mailing or causing to be mailed a fraudulent "First Notice of Fault and Demand for Payment" to plaintiff Havranek on or about February 18, 2010, demanding payment of $42,000,000 as "damages" as a result of alleged trespass by former Ulster County employee Katatsky;

29. Mailing or causing to be mailed a fraudulent "Administrative Affidavit of Specific Negative Averment, Opportunity to Cure and Counterclaim" to plaintiff

13

Katatsky on or about November 12, 2009 demanding a "court order" or "damages" as a result of alleged trespass by former Ulster County employee Katatsky;

30. Mailing or causing to be mailed a fraudulent "First Notice of Fault and Demand for Payment" to plaintiffs Katatsky and Veytia on or about February 18, 2010, demanding "damages" in the amount of $187,000,000 as a result of alleged trespass by former Ulster County employee Katatsky;

31. Mailing or causing to be mailed a fraudulent "Specific Affidavit of Negative Averment, Opportunity to Cure and Counterclaim" in or about January 2010 demanding "damages" from the Ulster County Sheriff's Department related to a traffic stop that occurred on January 6, 2010.

ii. Ed-George Parenteau:

1. Mailing or causing to be mailed a fraudulent "Demand for Payment" to the Town of Lloyd and plaintiffs Rizzo, Blume and Martuscello on or about September 24, 2009 demanding payment in the amount of $1,961,000,000 in retaliation for charges filed against Parenteau in the Town of Lloyd;

2. Mailing or causing to be mailed a fraudulent "Second Notice of Fault and Demand for Payment to the Town of Lloyd and plaintiffs Rizzo, Blume and Martuscello on or about October 7, 2009 demanding payment in the amount of $1,961,000,000 in retaliation for charges filed against Parenteau in the Town of Lloyd;

3. Mailing or causing to be mailed a fraudulent "Final Notice of Fault and Demand for Payment to the Town of Lloyd and plaintiffs Rizzo, Blume and Martuscello on or about October 27, 2009 demanding payment in the amount of $1,961,000,000 in retaliation for charges filed against Parenteau in the Town of Lloyd;

4. Mailing or causing to be mailed a fraudulent "Notice of Final Determination and Judgment Nihil Dicit" on or about October 26, 2009 to the Town of Lloyd and other plaintiffs

14

as debtors in the amount of $62,653,950,000 in retaliation for charges filed against Parenteau in the Town of Lloyd;

5. Mailing or causing to be mailed and or wired a fraudulent "UCC Financing Statement" with the New York Department of State on or about November 20, 2009 purporting that the Town of Lloyd, Ulster County, and plaintiffs Rizzo, Martuscello, Ackert, Kalimeras, Burns and Cohen were debtors in the amount of $62,653,950;

6. Mailing or causing to be mailed a fraudulent "Notice of Default for Statement of Issues" to Ulster County Executive Michael Hein on or about March 27, 2010;

7. Mailing or causing to be mailed a fraudulent "Notice of Default and Statement of Issues to plaintiff Postupack on or about March 27, 2010 including an invoice for $1,093,000,000 in retaliation for plaintiffs Postupack's refusal to file nonconforming documents in her capacity as County Clerk for the County of Ulster;

8. Mailing or causing to be mailed and/or wired a fraudulent "Self Executing Default Judgment Order Against all Defendants" to the Town of Lloyd and plaintiffs Day, Burns, Kalimeras, Ackert, Cohen, Shuman, Rizzo and Martuscello on or about April 30, 2010 purporting to evince a judgment against those plaintiffs in the amount of $1,961,000,000;

9. Mailing or causing to be mailed or wired documents including a fraudulent UCC Financing statement to Equifax credit reporting agency requesting that the UCC Financing Statement be placed on the credit report of plaintiff Rizzo.

iii. Jeffrey-Charles Burfeindt:

1. Mailing or causing to be mailed a fraudulent "Affidavit of Negative Averment, Opportunity to Cure and Counterclaim" on or about August 31, 2009 to the Town of Lloyd and Plaintiffs Blume, Rizzo, Day and Martuscello demanding payment for "damages" as a result of charges filed against him in the Town of Lloyd

2. Mailing or causing to be mailed a fraudulent "Demand for Payment" on or about September 24, 2009 to the Town of Lloyd and plaintiffs Day, Rizzo, Blume and Martuscello demanding payment in the amount of $2,304,000,000 as a result of charges filed against him in the Town of Lloyd;

3. Mailing or causing to be mailed a fraudulent "Second Demand for Payment" on or about October 7, 2009 to the Town of Lloyd and plaintiffs Day, Rizzo, Blume and Martuscello demanding payment in the amount of $2,304,000,000 as a result of charges filed against him in the Town of Lloyd;

4. Mailing or causing to be mailed a fraudulent "Final Demand for Payment" on or about October 20, 2009 to the Town of Lloyd and plaintiffs Day, Rizzo, Blume and Martuscello demanding payment in the amount of $2,304,000,000 as a result of charges filed against him in the Town of Lloyd;

5. Mailing or causing to be mailed a fictious judgment against Town of Lloyd and plaintiffs Day, Rizzo, Blume and Martuscello on or about October 24, 2009 in the amount of $2,304,000,000 as a result of charges filed against him in the Town of Lloyd;

6. Mailing or causing to be mailed and/or wired, a fraudulent "Maritime Lien" and fraudulent UCC Financing Statement with the New York State Department of State on or about November 20, 2009 naming the Town of Lloyd and plaintiffs Burns, Day, Ackert, Shuman, Kalimeras, Blume, Cohen, Rizzo and Martuscello as debtors in the amount of $73,612,800,000 in retaliation for the charges filed against Parenteau in the Town of Lloyd;

7. Mailing or causing to be mailed a fraudulent "Second Notice of Fault and Demand for Payment" on or about April 19, 2010 to Plaintiff Postupack demanding payment in the amount of $1,093,000,000 related to plaintiff Postupack's refusal to file nonconforming documents in her capacity as County Clerk for the County of Ulster;

8.  Mailing or causing to be mailed a fraudulent "Final Notice of Fault and Demand for Payment" mailed to the Ulster County Clerk's Office on or about April 29, 2010, demanding payment for $1,093,000,000.00 as "stipulated damages" for failure to respond to defendant Burfeindt's International Commercial Claim;

9.  Mailing or causing to be mailed and/or wiring to the New York State Department of State a fraudulent UCC Filing Statement against Nina Postupack and others on or about June 9, 2010 claiming an amount owed.  The amount of this "lien" is currently unknown.

iv.  Raymond Tompkins

1.  Assisting in the preparation or execution of a fraudulent "judgment" authored by defendant Burfeindt.  Upon information and belief, the mailing of this document was accomplished by Tompkins;

2.  Assisting in the preparation or execution of a fraudulent "Notice of Fault" mailed on March 20, 2010.  Upon information and belief, the mailing of this document was accomplished by Tompkins.

v.  Sara Ulloa

1.  Mailing or causing to be mailed a fraudulent "Demand for Payment" naming defendant Parenteau as the creditor in the amount of $1,961,000,000 to the Town of Lloyd and plaintiffs Rizzo, Blume and Martuscello on or about September 24, 2009;

2.  Mailing or causing to be mailed a fraudulent "Second Demand for Payment" naming defendant Parenteau as the creditor in the amount of $1,961,000,000 to the Town of Lloyd and plaintiffs Rizzo, Blume and Martuscello on or about October 7, 2009;

3.  Mailing or causing to be mailed a fraudulent "Final Demand for Payment" naming defendant Parenteau as the creditor in the amount of $1,961,000,000 to the Town of Lloyd and plaintiffs Rizzo, Blume and Martuscello on or about October 27, 2009;

17

4. Mailing or causing to be mailed a fraudulent "Demand for Payment" naming defendant Burfeindt as the creditor in the amount of $2,304,000,000 to the Town of Lloyd and plaintiffs Day, Rizzo, Blume and Martuscello on or about September 24, 2009;

5. Mailing or causing to be mailed a fraudulent "Second Demand for Payment naming defendant Burfeindt as the creditor in the amount of $2,304,000,000 to the Town of Lloyd and plaintiffs Day, Rizzo, Blume and Martuscello on or about October 7, 2009;

6. Mailing or causing to be mailed a fraudulent "Final Demand for Payment" naming defendant Burfeindt as the creditor in the amount of $2,304,000,000 to the Town of Lloyd and plaintiffs Day, Rizzo, Blume and Martuscello on or about October 20, 2009;

7. Agreeing to act as the agent and/or co-conspirator of Parenteau and Burfeindt by directing that any payment related to the above-mentioned documents be directed to her.

c. The time, place and contents of the alleged misrepresentations, and the identity of the to whom and by whom the representations were made are detailed in Section 5(b) above. However, for the sake of clarity, the misrepresentations alleged are as follows:

i. It is alleged that Richard Enrique Ulloa made the following fraudulent representations in the documents noted above:

1. That Ulloa had a valid judgment or lien against plaintiffs;

2. That the invoices, including the amount demanded therein were valid, due and owing;

3. That plaintiffs had agreed to the validity to the debts allegedly valid, due and owing;

4. That Plaintiffs had somehow wronged Ulloa;

        5. That a court of competent jurisdiction had reached a decision or verdict regarding defendants' allegations and held in defendants' favor.

   ii. It is alleged that Ed-George Parenteau made the following fraudulent representations in the document noted above:

        1. That Parenteau had a valid judgment or lien or against plaintiffs;

        2. That the invoices, including the amount demanded therein were valid, due and owing;

        3. That plaintiffs had agreed to the validity to the debts allegedly valid, due and owing;

        4. That plaintiffs had somehow wronged Parenteau;

        5. That a court of competent jurisdiction had reached a decision or verdict regarding defendants' allegations and held in defendants' favor.

   iii. It is alleged that Jeffrey-Charles Burfeindt made the following fraudulent representations in the document noted above:

        1. That Burfeindt had a valid judgment or lien or against plaintiffs;

        2. That the invoices, including the amount demanded therein were valid, due and owing;

        3. That plaintiffs had agreed to the validity to the debts allegedly valid, due and owing;

        4. That plaintiffs had somehow wronged Burfeindt;

        5. That a court of competent jurisdiction had reached a decision or verdict regarding defendants' allegations and held in defendants' favor.

  d. To date, no criminal conviction has been obtained for the predicate acts detailed above. It should be noted, however, that defendants Richard Ulloa, Ed Parenteau and Jeffrey Burfeindt were indicted on mail fraud charges in June 2010. See, 1:10-cr-00321 and 1:10-cr-00320.

e.  Upon information and belief, no judgment has been obtained against defendants related to the predicate acts herein.

f.  The predicate acts from a pattern of racketeering activity in that several connected frauds are committed to achieve defendants' ends. Specifically, defendants begin by sending a document called an "Affidavit of Negative Averment, Opportunity to Cure and Counterclaim", followed by a series of demands for payment, a fictious judgment and the filing of a UCC lien in various states. Notably, plaintiffs have alleged frauds committed by defendants on or about 50 separate, but related instances. Additionally, defendants conduct has followed this pattern in several instances in various municipalities located in the State of New York. Further, upon information and belief, defendants have used the pattern noted above against several nonparties who they have eventually filed a UCC Financing Statement against.

g.  Upon information and belief, the predicate acts alleged herein are part of a common plan by defendants to intimidate, extort and/or harass plaintiffs as part of a plan to paralyze, harm, wrong, entangle or otherwise occupy the time of local government, its employees and court systems. Upon information and belief, defendants have engaged in this conduct in an attempt to disrupt the administration of local government to such a degree that defendants are thereafter allowed to run afoul of federal, state and local laws without consequence.

6.  Describe in detail the alleged enterprise for each RICO claim.  A description of the enterprise shall include the following information:

a.  State the names of the individuals, partnerships, corporations, associations, or other legal entities which allegedly constitute the enterprise.

b.  Describe the structure, purpose, function and course of conduct of the enterprise;

c.  State whether any defendants are employees, officers or directors of the alleged enterprise;

d.  State whether any defendants are associated with the alleged enterprise;

20

e.   State whether you are alleging that the defendants are individuals or entities separate from the alleged enterprise, or that the defendants are the enterprise itself, or members of the enterprise; and

f.   If any defendants are alleged to be the enterprise itself, or members of the enterprise, explain whether such defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity.

**RESPONSE:**

a.   Upon information and belief, the individuals who make up the RICO enterprise are Richard Enrique Ulloa, Ed-George Parenteau, Jeffrey-Charles Burfeindt, Raymond Tomkins and Sara Ulloa. At this time, it is unknown whether additional individuals are involved with the enterprise.

b.   Given the lack of discovery, plaintiffs have little information about the structure of the enterprise. Upon information and belief, Richard Ulloa is the leader of the enterprise and aids or directs the other member's activities on behalf of the enterprise. Alternatively, upon information and belief, it is alleged that defendants function collectively and assist each other in the absence of a hierarchy within the enterprise. The purpose and function of the enterprise is to disrupt the daily functions of local government and to extort and intimidate officials of local government to such an extent that defendants are allowed to run afoul of federal, state or local laws without consequence. The course of conduct of the enterprise is, following an arrest of one of its members, that member begins sending demands for payment of large amounts of money to the arresting officer or officers, the town judge, the ADA assigned to the case and the municipality where the arrest occurred. After the initial and later demands for payment are ignored, the member of the enterprise drafts a fictious judgment and sends it to the affected parties. Thereafter, the member of the enterprise files a UCC Financing Statement against the parties named in the judgment and demands for payment. The UCC Financing Statement then appears on credit and title reports, among other things, and impairs the victims ability to obtain credit and alienate property and other similar transactions.

c.   It is alleged that all defendants are members of the enterprise; it is currently unknown whether the enterprise has a hierarchical structure. If such a hierarchal structure exists within the enterprise, it is alleged

based upon information and belief that Richard Ulloa is the leader of the enterprise.

    d.    It is alleged that all defendants are associated with the enterprise, including, but not limited to, as members thereof.

    e.    It is alleged that defendants are members of the enterprise itself.

    f.    It is alleged that all defendants are perpetrators related to the enterprise. Alternatively, pending discovery, Sara Ulloa and Tompkins may be passive instruments of the enterprise.

7.    State and describe in detail whether you are alleging that the pattern of racketeering activity and the enterprise are separate or have merged into one entity.

**RESPONSE:** Without the benefit of discovery, plaintiffs' allege that the pattern of racketeering is separate and distinct from the enterprise. Specifically, it is alleged that the pattern of racketeering is carried out by the persons who are members of the RICO association-in-fact.

8.    Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.

**RESPONSE:** Upon information and belief, the enterprise exists to disrupt local government and in an effort to allow defendants to run afoul of federal, state and local law. The racketeering activity alleged by plaintiffs' is the means to the association-in-fact's ends. It is currently unknown if the enterprise engages in activities other than those alleged in the Complaint and herein. However, it should be noted that the association-in-fact has filed UCC Financing Statements against nonparties to this suit.

Accordingly, it is likely that the activities and pattern of racketeering extend well beyond the scope of this lawsuit.

     9.    Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering.

     **RESPONSE:** Defendants, through the enterprise, have received a security interest in plaintiffs' property, thereby restricting the transfer of that property without payment of defendants' fraudulent liens and judgments. Plaintiffs anticipate augmenting this response following discovery.

     10.    Describe the effect of the activities of the enterprise on interstate or foreign commerce.

     **RESPONSE:** The activities of the enterprise effect interstate commerce by burdening credit and property transactions between interstate parties, involve UCC Filings made in various states and effect plaintiffs' credit scores as determined with various Country-wide reporting agencies.

     11.    If the complaint alleges a violation of 18 U.S.C. Section 1962(a), provide the following information:

          a.    State who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and

          b.    Describe the use or investment of such income.

     **RESPONSE:** Not Applicable.

12.     If the complaint alleges a violation of 18 U.S.C. Section 1962(b), describe
in detail the acquisition of maintenance of any interest in or control of the alleged
enterprise.

      **RESPONSE:** Not Applicable.

13.     If the complaint alleges a violation of 18 U.S.C. Section 1962(c), provide
the following information:

      a.     State who is employed by or associated with the enterprise; and

      b.     State whether the same entity is both the liable "person" and the
      "enterprise" under Section 1962(c).

      **RESPONSE:**

      a.     Defendants Richard Ulloa, Jeffrey Burfeindt and Ed Parenteau are
      associated with the RICO enterprise.  Upon information and belief,
      defendants Tompkins and Sara Ulloa are associated with the enterprise
      as well.

      b.     Defendants are the liable persons under section 1962(c). Collectively,
      as an association-in-fact, some or all of defendants make up the RICO
      enterprise.

14.     If the complaint alleges a violation of 18 U.S.C. Section 1962(d), describe
in detail the alleged conspiracy.

      **RESPONSE:**  Plaintiffs allege that defendants conspired together to harm
the interests of the municipal subdivisions and their respective employees in this suit to
serve the purpose of the association-in-fact, whether that purpose be disrupting, impairing
or otherwise harming the operation of local government and/or allowing defendants to
run afoul of federal, state and or local law.  Evidence of this conspiracy is seen in
documents sent by defendant Parenteau and signed by Richard Ulloa, and other

documents stating that funds paid to Burfeindt should be paid to Parenteau on his behalf.
Additionally, it is alleged that defendants Tompkins and Ulloa agreed to participate in
this conspiracy and committed an overt act in furtherance thereof.  Notably, documents
sent by defendants Parenteau and/or Burfeindt state to remit payment to defendant Sara
Ulloa.  Additionally, upon information and belief, defendants Tompkins and/or Sara
Ulloa assisted in the preparation fictious complaints, judgments liens or other frauds
created by defendants Parenteau and Ulloa.  Upon further information and belief,
defendants Tompkins and Sara Ulloa mailed or caused to be mailed fraudulent
documents, complaints, judgment and/or liens to plaintiffs, and in so doing, assisted and
/or committed the predicate act of mail fraud.

     15.     Describe the alleged injury to business or property.

     **RESPONSE:**  Plaintiff's injuries to their business and property consist of
loss of creditworthiness, loss of ability to alienate property and loss of ability to obtain
lines of credit, loans or other similar money lending arrangements.  Additionally,
plaintiffs' business and property interests have been damages by incurring expenses and
fees related to credit monitoring services, obtaining credit reports and legal fees and costs
related to liens and judgments filed by defendants.  Additionally, the municipal
subdivision defendants have lost valuable employee time directly related to the acts of
defendants and their association in fact.  For example, the municipal subdivisions have
lost valuable employee time reviewing the frauds sent to them by defendants, meeting
with employees who were the subjects of these filings, meeting with legal counsel about
the frauds and attempting to have the liens and judgments filed by defendants expunged.

16.     Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.

**RESPONSE:**  Plaintiffs injuries have resulted from defendants' continued pattern of mail and/or wire fraud in that the mailings or wires themselves have injured plaintiffs by impacting their creditworthiness, ability to alienate property and ability to obtain lines of credit, loans or other similar money lending arrangements.  Further, defendants conduct has been the sole cause of some or all of plaintiffs incurring costs of credit monitoring services, obtaining credit reports and legal fees and costs related thereto due to the filings of fraudulent and/or fictions liens and/or judgments against plaintiffs. Additionally, the municipal subdivision defendants have lost valuable employee time directly related to the acts of defendants and their association in fact; employee time that could have been spent working in a plaintiff's specific capacity, whether that capacity was as a police officer, Town Justice, County Attorney, Assistant District Attorney or other municipal role.  For example, the municipal subdivisions have lost valuable employee time reviewing the frauds sent to them by defendants, meeting with employees who were the subjects of these filings, meeting with legal counsel about the frauds and attempting to have the liens and judgments filed by defendants expunged.

17.     List the damages sustained for which each defendant is allegedly liable.

**RESPONSE:**  Defendants are alleged to be collectively liable for all damages sustained by plaintiffs as detailed in Response No. 4 as members of a RICO association-in-fact. Alternatively, defendants are liable for damages sustained to specific plaintiffs as noted in Response No.4 as follows:

26

    a.  Richard Enrique Ulloa:

        i.  Town of Rosendale

        ii.  Robert Vosper

        iii.  Joshua Caliendo

        iv.  Ulster County

        v.  Beatrice Havranek

        vi.  Eileen Katatsky

        vii.  Nina Postupack

        viii.  Nereida Veytia

        ix.  Town of Ulster

The total amount of damages suffered by the plaintiffs noted above is currently unknown.

    b.  Ed-George Parenteau:

        i.  Town of Lloyd

        ii.  Eugene Rizzo

        iii.  Heather Blume

        iv.  Daniel Martuscello

        v.  Amy Shuman

        vi.  David Ackert

        vii.  Kathleen Burns

        viii.  Anthony Kalimeras

        ix.  Jeff Cohen

      x.  Ulster County

     xi.  Nina Postupack

The total amount of damages suffered by the plaintiffs noted above is currently unknown.

   c.  Jeffrey-Charles Burfeindt:

      i.  Town of Lloyd

     ii.  Darrell Day

    iii.  Eugene Rizzo

    iv.  Heather Blume

     v.  Daniel Martuscello

    vi.  Anthony Kalimeras

   vii.  Kathleen Burns

  viii.  Jeff Cohen

    ix.  David Ackert

     x.  Amy Shuman

     xi.  Nina Postupack

The total amount of damages suffered by the plaintiffs noted above is currently unknown.

   d.  Raymond Tompkins:

      i.  Town of Lloyd

     ii.  Darrell Day

    iii.  Eugene Rizzo

      iv.  Heather Blume

      v.  Daniel Martuscello

      vi.  Ulster County

      vii.  Nina Postupack

The total amount of damages suffered by the plaintiffs noted above is currently unknown.

    e.  Sara Ulloa:

      i.  Town of Lloyd

      ii.  Darrell Day

      iii.  Eugene Rizzo

      iv.  Heather Blume

      v.  Daniel Martuscello

The total amount of damages suffered by the plaintiffs noted above is currently unknown.

18.    List all other federal causes of action, if any, and provide the relevant statute numbers.

    **RESPONSE:**  None.

19.    List all pendent state claims, if any.

    **RESPONSE:** Plaintiffs' have alleged the following pendant state-law based claims:

    a.    Abuse of Process

    b.    Prima Facie Tort

29

20.     Provide any additional information that you feel would be helpful to the Court in processing your RICO claim.

     **RESPONSE:** None.

     **PLEASE TAKE NOTICE** that Plaintiffs reserve the right to alter, amend or supplement this document in accordance with the Local Rules of Northern District of New York and any scheduling order relevant to this case.

Dated:  June 30, 2010        Bailey, Kelleher & Johnson, P.C.

                    S/

           By: _____

              John W. Bailey
              Bar Roll No.: 101069
            Attorneys for Plaintiffs
            Pine West Plaza 5, Suite 507
            Washington Avenue Extension
            Albany, New York 12205
            (518) 456-0082

TO:   Mr. Richard Enrique-Ulloa
      22 Mountain Ridge Road
      Stone Ridge, NY  12484

      Ms. Sarah Ulloa
      1121 Ovington Avenue
      Brooklyn, NY  11219